## NICHOLAS DREW v. DANIEL F. COMSTOCK.

*Assault—Resistance to trespass on land—Self-defense.*

1. An assault involves every attempt or offer, with force and violence, to do a corporal hurt to another; and it may be entirely lawful as either excusable or justifiable.

2. In an action for an assault it was error, in the absence of supporting proof, to so charge the jury as to give them to understand that the assault was necessarily unlawful, and that so long as they did not exceed the amount of damages claimed in the declaration, they could allow what they thought fit in view of the possibility that latent injuries were inflicted.

3. A section foreman on a railroad undertook to repair a disused track that lay in part upon land of a private owner, who ordered him off,

pointed out his own boundary, and gave the intruder a push, and afterwards a blow. There was some question as to whether the blow was not in self-defense, or was not, perhaps, given in the attempt to ward off a counter attack. There was nothing tending to show that the intrusion to re-lay the track was authorized by the railroad company, or by any officer of the company who could represent it in such a matter. *Held*, that as such authority could not be presumed, the trespass was apparently without justification; that the push did not justify the use of force by the trespasser, nor perhaps deprive the landowner of the right to strike the subsequent blow in self-defense.

4. Neither the assistant road-master of a railroad company, nor the master of transportation can be presumed to have authority to represent the company in claiming disputed titles.

Error to Mecosta. (Fuller, J.) May 13.—June 3.

TRESPASS. Defendant brings error. Reversed.

*Norris & Uhl* for appellant. When the purpose for which an easement is granted no longer exists, the easement ends: Washb. Easements (2 ed.) 623, § 3 ; verbal permission to lay track on one's land, is a mere license, revocable at any time : *Druse v. Wheeler* 22 Mich. 439 ; *Miller v. The Aub. & Syrac. R. R.* 6 Hill 61 ; *Ruggles v. Lesure* 24 Pick. 187, and is revoked by conveying the land : *Eggleston v. N. Y. & Har. R. R.* 35 Barb. 162 ; *Carter v. Harlan* 6 Md. 20 ; *Hetfield v. Cent. R. R.* 5 Dutch. 571 ; *Kamphouse v. Gaffner* 73 Ill. 453 ; *Whitaker v. Cawthorne* 3 Dev. (N. C.) L. 389 ; *Cook v. Stearns* 11 Mass. 538 ; the attempt to deprive one of his goods or possession may be resisted with violence : 3 Bl. Com. § 121 ; *Com. v. Clark* 2 Met. 25 ; a trespasser cannot give himself any right of possession by his trespass : *Brown v. Dawson* 12 Ad. & El. 627 ; *Phillips v. Jamieson* 51 Mich. 153 ; *People v. Adams* 52 Mich. 105.

*M. Brown* for appellee.

CAMPBELL, J. Drew recovered $633 damages against defendant for assault and battery. Defendant brings error. The circumstances, so far as they are not disputed, were these : Defendant had become owner of property in Big Rapids that had been mill property lying west of the Grand Rapids & Indiana Railroad. This was once owned by one Moon, and while he so owned it a spur track had been taken from a

side track connected by switch with the main track, so as to lead from the mill to the side track and thence out upon the main road, and with no other means of egress. This spur had been so built that one of the rails was on Moon's land, and it was built to accommodate the mill, but was used, more or less, to back cars on. It was built in 1873. In the mean time it had become dilapidated and the ties had rotted, so that at the time of this difficulty it was unfit for use without repair. Plaintiff bought the property in 1880, and in the spring of 1881 went on to build a mill, which he got ready for use in October, 1881. There was a siding of the Detroit & Lansing Railroad which connected with his mill premises, and over which he shipped lumber. The siding was so near the spur that cars upon the latter would interfere with those on the siding. Defendant had desired the Grand Rapids & Indiana Railroad to remove the spur from his land, and some preparation had been made to do so. On the evening of the 12th of October, 1881, plaintiff, who was section foreman of track repairing for the Grand Rapids & Indiana Railroad, spiked down the switch from the spur to the side track of that road, to prevent any use of it, and had some talk with defendant, and from that or other means understood that he did not desire the spur to be used or to remain on his land. On the 13th of October, in the morning, plaintiff came with a gang of men, and proceeded to renew the spur track by taking out the old ties and putting in new and sound ones throughout. Defendant forbade his doing so, and he persisted. After coming twice and ordering plaintiff off, with his reasons for doing so, plaintiff still insisting that he would refit the track, defendant came a third time and pointed out his line and insisted it should not be trespassed on. At this point the controversy begins. It is claimed by plaintiff that defendant pushed him off, and before he could entirely recover himself struck him over the forehead with a stick, and wounded him over the eye so that he was struck down ; and that this wound was a permanent injury, of a serious character.

Defendant claims that the stick was a sawed-off broom-

handle that he had picked up in his mill to use as a staff, as he had been lamed; and that he struck to ward off an apparent effort by plaintiff to strike him with an uplifted shovel, and did not aim to do him injury, but the stick glanced and hit him as it fell. The stick was described by plaintiff as a hard-wood stick about four feet long. It appears to have been used with only one hand. When it was used, defendant's left side was nearest plaintiff, who claims he turned round to face him. The blow fell on the further side of plaintiff's forehead, immediately over his left eye. It was evidently struck by the rough end of the stick, as the wound, as described by Dr. Hendryx, the physician who dressed it, was only a flesh wound, less than an inch in length, which bled very freely, but involved no injury to either bone or periosteum, which had no complications in healing, and which he did not regard as a permanent injury.

It appears from the record that the case became greatly magnified by some extraneous matters, and there was much in the course of the trial which the court evidently regarded as of doubtful propriety, and let in with some hesitation. We shall, however, confine ourselves to such questions as arose upon the charge, as we can hardly believe that a new trial will be allowed to be affected by the exaggerations which seem to have made out of what no physician has deemed a very serious wound a murderous injury.

The whole case, so far as the alleged assault is concerned, involved but a few questions. It is not disputed, and the court held, that the plaintiff was actually intruding and trespassing on defendant's ground, with a design of permanent occupancy. But the court also held that defendant had no right to use any degree of force to keep off the trespassers, if the railroad company, under whom plaintiff had to justify, claimed rights there. And the court held that there was evidence of such a bona fide claim, and further, that if defendant had no right to push plaintiff in the first instance he was in fault in striking the blow, and must pay compensatory damages. He also referred several times to the claim of damages of $5000 in the declaration as the only absolute

limit to the jury's discretion, and made a further statement in these words: "A verdict in this case must cover all time. Mr. Drew can never sue again for any damage, no matter if he was prostrated on his bed during his whole life-time after this, from the effects of it. One action is all that can be brought in that case." The earlier part of the charge practically compelled the jury to find some damages.

Some other portions of the charge are complained of, but as they mostly bear upon what is raised by these rulings, we need not consider them separately.

In opening the summing up, after referring to the case as one of great importance, because of the large claim of damages, the court told the jury there was no dispute "as to the fact that an assault and battery was committed, and the time when it was committed, and the person by whom and upon whom the injury was committed." An assault was then defined as involving an attempt "with unlawful force" to inflict bodily injury, and a battery as an actual injury, which in this case was a real one. And in the same connection the jury were told, as they were afterwards told, that they had entire discretion as to damages within the sum claimed in the declaration.

When the jury were told that defendant had committed an assault and battery, and that every assault and battery was a use of unlawful force, they were practically told to find for the plaintiff, and give discretionary damages; and when they had their attention subsequently called to the fact that plaintiff could never sue again, although he might be prostrated on his bed during his whole life-time, they were authorized to act on the theory that the injury might produce future and permanent mischief not yet developed, and might assess their damages on that possibility. All of this was erroneous. There was a dispute whether the blow was aimed at all against plaintiff's safety, or directly against his person. The whole body of the controversy bore upon its legality; and there was no testimony whatever which tended to show that all of the effects of the wound were not already

developed, or the wound not entirely healed without danger of reopening.

If an assault is always unlawful, then it was not admitted by defendant that he had committed one. But the definition is incorrect. An assault may be entirely lawful, as either excusable or justifiable, and it involves every " attempt or offer, with force and violence, to do a corporal hurt to another." Toml. Law Dict. " Assault." The jury, therefore, were misled in the outset into an assumption which, from the peculiar amount of the verdict, does not seem to have been corrected. And while there are in subsequent instructions some explanations which bear in another direction, they were so qualified as to leave room to the end for the original impression.

Upon the question of the original trespass, it appears by plaintiff's own showing that he knew defendant disputed the right of the company. He could not justify his own entry unless the company could do so, as he did not enter in his own right. We find nothing in the record which tends to show either that the company was in ignorance of the exact condition of the title, or that it claimed any adverse holding. So far as there is any evidence at all, it bears in the other direction. It appears, without any contradictory evidence that we have discovered, that the only persons who had any right to act for the railroad proposed to respect defendant's claim. It would be unjust to the corporation to attribute to it a design which was unlawful, without proof that some responsible agent was engaged in it. Plaintiff, according to his own statement, communicated with no one but an assistant road-master and a master of transportation, neither of whom can be presumed to have authority to represent the company in claiming disputed titles, and he also says that he proposed to go forward on his own responsibility, without reference to their orders. Under such circumstances it is difficult to see where there is any room for justification shown, or for holding him to be anything but a trespasser on his own responsibility. And it cannot be questioned that the entry of plaintiff and his gang of men to relay the track, if tortious at all,

in spite of any opposition by defendant, was a very serious wrong, directly calculated to provoke violence.

There was nothing in the push asserted to have been given in the first place to amount to a wrongful assault on a trespasser, or to justify force on the part of plaintiff. And if defendant used his stick to defend himself from what seemed to him to be an assault, there was no wrong in doing so. And if the act of plaintiff was such as appeared to involve serious bodily harm or peril to his life, we are not prepared to say that he would be deprived of his right of self-defense by even a technical unlawful assault which did no damage.

All these considerations were in the case, and upon any theory of the conduct of the parties the instructions went too far. Passing any other grounds of error as unnecessary to be dealt with, the judgment must for these be

Reversed, with costs, and a new trial granted.

CHAMPLIN and SHERWOOD, JJ. concurred. COOLEY, C. J. did not sit.