MITCHELL v DALY

Docket No. 66032. Submitted January 10, 1984, at Grand Rapids.— Decided April 2, 1984. Leave to appeal applied for.

Lloyd Mitchell brought an action in Calhoun Circuit Court against Harold M. Daly, M.D., for assault and battery. Mitchell claimed that while he was hospitalized under Daly's care, Daly struck him on the left side of his head, hitting his face and ear. The court, Stanley E. Everett, J., entered judgment on a jury verdict for the plaintiff. Thereafter, the court granted defendant's motion for a new trial, finding that the court had erroneously instructed the jury. The plaintiff appealed by leave granted. *Held:*

The circuit court's grant of a new trial should be reversed and the judgment for the plaintiff on the jury verdict reinstated. While erroneous jury instructions are an error of law and may form the basis for granting a new trial, here there was no error of a magnitude or kind requiring the new trial granted by the trial court. The trial court did not err in its instructions to the jury on assault and battery.

Reversed and judgment for the plaintiff reinstated.

1. Assault and Battery — Assault — Imminent Peril.

An assault is any intentional unlawful offer of corporal injury to another by force, or force unlawfully directed toward the person of another, under such circumstances as creates well-founded fear of imminent peril, coupled with the apparent present ability to effectuate the attempt if not prevented.

2. Assault and Battery — Battery.

A battery, or assault and battery, is the wilful touching of the person of another by the aggressor or by some substance put in motion by him; a battery is the consummation of an assault.

References for Points in Headnotes
[1] 6 Am Jur 2d, Assault and Battery §§ 3, 110.
[2] 6 Am Jur 2d, Assault and Battery §§ 5, 111.
[3, 4] 6 Am Jur 2d, Assault and Battery § 109 *et seq.*
[5] 58 Am Jur 2d, New Trial §§ 212, 213.
[6] 5 Am Jur 2d, Appeal and Error § 776 *et seq.*
   58 Am Jur 2d, New Trial § 125 *et seq.*

3. ASSAULT AND BATTERY — INTENT.

A defendant's intent to do harm in an assault and battery case is not a prerequisite to his liability.

4. ASSAULT AND BATTERY — INTENT.

The intent necessary to establish a tortious assault is either an intent to commit a battery or an intent to create in the victim a reasonable fear or apprehension of an immediate battery.

5. NEW TRIAL — APPEAL.

The Court of Appeals, in determining whether a trial court properly exercised its discretion in granting a new trial, inquires whether the reasons assigned by the trial court for its action are legally recognized and whether the reasons are supported by any reasonable interpretation of the record.

6. NEW TRIAL — JURY INSTRUCTIONS.

Erroneous instructions to a jury constitute an error of law and may form the basis for granting a new trial; however, where the error is not of great magnitude, a new trial is not required.

*Sablich, Ryan, Bobay & Pollok, P.C.,* for plaintiff.

*Tuck & Garrison* (by *Robert C. Tuck),* for defendant.

Before: MACKENZIE, P.J., and BEASLEY and K. B. GLASER,* JJ.

BEASLEY, J. Plaintiff, Lloyd Mitchell, appeals by leave granted from the trial court's order granting defendant a new trial after a jury verdict for plaintiff. On appeal, we reverse and reinstate the jury verdict for plaintiff.

Plaintiff sued defendant, a medical doctor, for assault and battery and obtained a unanimous jury verdict for $37,000 in damages. Plaintiff claimed that, while hospitalized under defendant's care, defendant struck him on the left side of the head, hitting his face and ear when an argument

---

* Circuit judge, sitting on the Court of Appeals by assignment.

developed over defendant's expressed medical opinion that plaintiff should return to work in a shop. After entry of judgment on the verdict, defendant filed a motion for a new trial, arguing that the trial court's instructions on intent were erroneous. In a written opinion, the trial judge granted defendant's motion for a new trial.

After selection of the jury, but before commencement of trial, the trial judge gave a cautionary instruction. He defined the two terms, assault and battery, as follows:

"An assault is an intentional, unlawful offer or attempt to cause bodily jury *[sic]* to another by force.

"A battery is the willful touching of the person by another—pardon me—the person of another by the aggressor and is the consummation of an assault."

This cautionary instruction was given on November 17, 1981, which was at a time before adoption of the definitions of assault and of battery in Standard Jury Instructions Second in September, 1982.[1]

After completion of trial, the trial judge instructed the jury, including definitions as follows:

"The offense charged by the plaintiff against the defendant is assault and battery. An assault is an intentional, unlawful offer or attempt to cause bodily injury to another by force. A battery is the willful touching of the person of another by the aggressor and is the consummation of an assault."

It should be noted that defendant had made a counterclaim against plaintiff for malicious prose-

---

[1] Previously, the Standard Civil Jury Instructions did not include a chapter dealing with assault and battery. Not until September, 1982, was the assault and battery chapter added, which included definitions of assault and of battery.

cution and that the trial judge instructed the jury at some length regarding malicious prosecution and defendant's claims regarding his counterclaim.

Upon completion of the jury instructions, counsel for plaintiff did not make any objection, but counsel for defendant objected to the court's failure to give his following requested instruction:

"I object to the court not tendering our suggested instruction which reads: 'I instruct you that a party who is injured by a wrong inflicted upon him by another has a duty to lessen his injury as much as possible and to avoid aggravating it or allowing it to continue. If you find he failed in that duty, you should reduce any damages sustained by that portion which accrued through his own failure to lessen his damages.' "

Other than that request, which is irrelevant to issues raised on appeal, counsel for defendant indicated his approval of the jury instructions given by the judge.

Later in the day that the jury received the case, the following occurred:

"*The Court:* The jury sent out the following notes: 'Does intent to do harm have to be established in this case? Please define also assault and battery.' I discussed this with the attorneys and suggested that I would send to the jury, in writing, the definition of assault and battery as given in the jury instructions. I have done that, but *Mr. Pollock* [plaintiff's attorney] requested an added alternate definition which came from—what case was it?

"*Mr. Pollock: Tinkler v Richter,* 295 Mich 396 (indicating).

"*The Court:* All right. Any objection to that procedure, gentlemen?

"*Mr. Pollock:* No, your Honor.

"*The Court:* Mr. Tuck?

"*Mr. Tuck [defense counsel]:* Your Honor, as I have expressed in chambers, I do object to the admission of the second alternate definition. I think it might lead to confusion on the part of the jury, and that further adds a second or an alternative definition which I think does not correspond to the facts in this case; that is, my recollection is, there's no testimony that the alleged victim was placed in fear of an assault.

"*The Court:* Well, perhaps there's something to be said about your latter comment, but I don't find that it changes the definition. I have done it now. I'm going to stand by it. I think it's more—while it's a bit archaic in form, as far as I'm concerned, too long, I think it corresponds a little more closely to the criminal definition of assault which we now use."

The instruction which was sent to the jury, and as discussed above, read as follows:

"The definition of assault and battery as given to you in the instructions is as follows: An assault is an intentional, unlawful offer or attempt to cause bodily injury to another by force.

"A battery is the willful touching of the person of another by the aggressor and is the consummation of an assault.

"An alternate definition is as follows: An assault may be defined as any intentional, unlawful offer or corporal injury to another by force, or force unlawfully directed toward the person of another, under such circumstances as create a well-founded fear of imminent peril, coupled with the apparent present ability to effectuate the attempt if not prevented."

Subsequently, at 5:35 p.m. on that same day, the jury asked a further question of the court, and the following occurred:

"*The Court:* I thought I'd have you come in so that I could address you and perhaps—and get your question and answer. Before doing so, Dr. Daly had to respond to

a call so he is not present, but, of course, Mr. Tuck is here for him. Now, I'm going to try to keep it simple. The question you have sent is: 'Do we have to show proof that the defendant intended to do bodily harm in this civil case or is that true only in criminal cases?'

"In order for there to be an assault civilly or criminally, the person accused of the assault must have either intended to injure someone or intended to put the victim in reasonable fear or apprehension of an immediate battery. Now, do you follow that? Does that make sense to you? For example, supposing an individual were to come to you, double his fist up, put it under your nose, not touch you, but says, 'You do as I tell you or I'm going to smack you one.' Now, that—whether he intended to do harm is not necessary if he intended to put the person in fear that he was going to be struck.

"On the other hand, if one of you were to see a fellow man at work and give him a pat on the back and say, 'How are things going today,' if you accidentally cause harm, that would not be assault and battery because there was no intention to harm the individual. You might accidentally cause harm without intending to do it. So the intent with which the defendant in this case must have committed the assault—or the act, must either have been to do injury or to put the victim, in this case, the plaintiff, in reasonable fear or apprehension of an immediate battery. Who is the foreman?

"*Juror No. 1:* (Indicating).

"*The Court:* Do you think that answers the question or do you wish to discuss it then?

"*Juror No. 1:* I think it does. I'm in hopes that this would put it in the right—

"*The Court:* You discuss it further. If it doesn't answer your question, if you need further explanation, I will try to give it to you. I think probably that is as close as I can come to putting it in simple terms. All right, you discuss it further."

After the jury again retired, the court inquired of counsel whether they objected to the explanation he had given, and the following interchange occurred:

"*Mr. Pollock:* Yes, your Honor, I do have an objection I'd like to place on the record.

"*The Court:* All right.

"*Mr. Pollock:* I think the instruction as stated is unclear for the jury in that it seems to indicate that all of the harm incurred by the plaintiff has to arise from the fact of being struck. I don't think that is the case law and I would object to that.

"*The Court:* I don't understand what you're saying. I didn't talk anything about the harm done. I tried to answer the question as to what intent in the mind of the defendant had to be established. That was the question, not what harm he did. What intent had to be established.

"*Mr. Pollock:* I realize that; but my understanding is that if he intended even minimal harm, he would be responsible for the damages that arise from even minimal harm. I think there is a problem with respect to the definition of 'harm' here.

"*The Court:* I didn't define harm.

"*Mr. Pollock:* I realize that.

"*The Court:* Your objection is on the record. If it has to be reviewed, somebody is going to have to understand it better than I do.

"*Mr. Tuck:* I make the same point I did last time. I don't feel the second part of that definition corresponds to the proofs.

"*The Court:* Well, I'm not so sure it does in this case. That's why I tried to illustrate to them what I'm talking about by fear or apprehension of a battery. But, in any event, that is the definition of assault as I see it. All of us have been doing a little searching to find different and simpler ones. All right, we will recess, then, until we hear from them."

The foregoing occurred on November 19, 1981, and ultimately, in the evening, the jury was released for the night. Proceedings recommenced at 9:40 a.m. on November 20, 1981, and, on that morning, the jury rendered a unanimous verdict of $37,000 in favor of plaintiff, $7,000 of which was

for lost wages. The jury also rendered a verdict of no cause of action with respect to defendant's counterclaim for malicious prosecution.

After entry of judgment for plaintiff on the jury's verdict, defendant filed a motion for judgment notwithstanding the verdict, amendment of judgment and a new trial. In granting a new trial, the trial judge filed a written opinion holding that the alternate definition of assault should not have been given. He said:

"There was no question of an act, falling short of a battery, by which the defendant intended to instill fear in the plaintiff. That portion of the later instructions should not have been given.

"More importantly, the questions asked by the jury were not directly answered. Under the facts of this case, the jury should have been told, 'Yes, there must have been an intent on the part of the defendant to "do harm".' This was at the heart of the controversy and was not properly submitted to the jury."

The trial judge's ruling granting a new trial to defendant was made on June 29, 1982, still at a time prior to the adoption of SJI 115.01 in September, 1982.

In reviewing the correctness of the trial judge's granting of a new trial, at the outset we note that his decision is not controlled by SJI 115.01 or 115.02, as they were not added until September, 1982. There is no question that these added portions of the Standard Jury Instructions were not intended to be applied retroactively. Therefore, at the time of trial in November, 1981, there was no adopted standard jury instruction requiring a specified definition of assault and battery. The mandatory rule of *Javis v Ypsilanti Bd of Ed*[2] did not apply be-

---

[2] 393 Mich 689, 702; 227 NW2d 543 (1975).

cause there was no existing relevant standard civil jury instruction then in existence.

Without question, the leading Michigan civil assault and battery case is *Tinkler v Richter*,[3] where the Supreme Court affirmed a jury verdict of no cause of action. In *Tinkler*, plaintiff, an 87-year-old man, sued his son-in-law, who was about 60, for assault and battery, claiming that, in a dispute over a dog, defendant struck him, knocking him into a table, and that he then fell to the floor and was unconscious for a few minutes. Defendant denied plaintiff's version but admitted that he shoved plaintiff away from him, did not strike him, and that, in fact, four days later, plaintiff was assaulted by an unknown person while walking down his driveway and that this latter event was the cause of his injuries. The trial court instructed the jury in part as follows:

" 'Now this case, ladies and gentlemen, grows out of an alleged assault: And I may say to you that an assault involves every offer or attempt with force and violence to do a corporeal hurt or injury to another, and having the present ability to carry it into effect; and an assault and battery occurs when one person, without excuse or justification intentionally beats, wounds and bruises the person of another; and that is what the plaintiff claims in this case, that he was assaulted and that he was beaten, that he was bruised; that the defendant intentionally assaulted him with force and violence and inflicted injury.' "[4]

On appeal, the primary issue was whether the use of the words "beat", "wound", and "bruise" placed an incorrect burden upon the plaintiff in proving his case and, thus, constituted error re-

---

[3] 295 Mich 396; 295 NW 201 (1940). *Tinkler* is cited as authority for both SJI 115.01 and 115.02.

[4] *Tinkler, supra,* pp 399-400.

quiring reversal. The Supreme Court cited two Michigan cases[5] which define assault and battery in generally the same terms as in *Tinkler.* However, in *Tinkler,* the Supreme Court also cited, without comment, 6 CJS 796, § 1, which provides:

"An assault may be defined as any intentional unlawful offer of corporal injury to another by force, or force unlawfully directed toward the person of another, under such circumstances as create a well-founded fear of imminent peril, coupled with the apparent present ability to effectuate the attempt if not prevented. * * *

"A battery, or assault and battery, is the wilful touching of the person of another by the aggressor or by some substance put in motion by him; or, as it is sometimes expressed, a battery is the consummation of the assault."[6]

In the CJS definition set forth in *Tinkler, supra,* the additional words "under such circumstances as create a well-founded fear of imminent peril" are the same words contained in the definition contained in SJI 116.01 which, as we have already indicated, is not controlling in the within case because the within case was heard and decided before the definitions in SJI were added. More importantly, these words are included in the so-

[5] *People v Lilley,* 43 Mich 521, 525; 5 NW 982 (1880); *Drew v Comstock,* 57 Mich 176, 181; 23 NW 721 (1885).

[6] *Tinkler, supra,* p 401. In the 1975 revision to CJS (6A CJS 316, 318, 319) the definitions are further changed to read:

"a. Assault

"An assault is any unlawful offer or attempt to injure another with apparent present ability to effectuate the attempt under circumstances creating a fear of imminent peril." 6A CJS 316.

"b. Battery or Assault and Battery

"A battery is the willful touching of the person of another and has been said to be the consummation of the assault." 6A CJS 318.

"§ 3. Distinctions

"An assault is distinguishable from a battery in that the former is merely an unlawful attempt to injure another by force, while the latter is the actual use or commission of such violence." 6A CJS 319.

called alternate definition given by the trial judge in answer to a jury question in the within case.

It seems clear that any reasonable meaning that can be attributed to these added words placed an additional burden of proof upon this plaintiff before he could recover. Thus, even if the trial judge was correct in concluding, as he did, that "that portion of the later instructions should not have been given", the error was harmless because it served only to place an additional improper and incorrect burden upon plaintiff. Since the jury found for plaintiff, even where the later-described incorrect instruction (which increased plaintiff's burden) was given, there was no harm to the defendant. Strongly supporting this reasoning and conclusion is *Johnson v Mack.*[7] When the trial judge says, as he did, that the jury should have been told that there must have been an intent on the part of the defendant to do harm, the trial judge was in error. This is not a requisite in every civil assault and battery case.

In *Tinkler, supra,* the Supreme Court also said as follows:

"The trial court also instructed the jury as follows:

" 'On the other hand, any person who receives an intentional physical injury at the hands of another is entitled to recover his damages from the person inflicting the injuries, except in such cases where the defendant can show a legal justification for his act.'

\* \* \*

"The definition of a battery given by the trial court,

[7] 141 Mich 99; 104 NW 395 (1905). A jury awarded damages to plaintiff from defendant, a police officer, when defendant shot plaintiff in the back without right in attempting to arrest him on suspicion of having committed a misdemeanor several hours earlier. In affirming, the Supreme Court held that a jury instruction which erroneously included the theory of a negligent shooting was harmless to defendant, saying: "If the court was in error in giving the portion of the charge objected to, it was in favor of defendant." 141 Mich 103.

standing alone, might be misleading, but, in our opinion, the language used in other instructions informed the jury that there could be a recovery without the jury finding a beating, wounding and bruising. We cannot say that the jury was misled when we consider the instructions as a whole."[8]

We do not interpret *Tinkler* to require that an intent to do harm on the part of a defendant in an assault and battery case is a prerequisite of liability. With respect to the questions certified by the trial court and parties to this Court, we hold that, under the facts of this case, the plaintiff was not obligated to establish that the defendant intended to harm the plaintiff in order to succeed with his suit for assault and battery.

In *People v Sanford,*[9] which, of course, was a criminal case, the Supreme Court, reversing this Court, held that we had erred in defining "criminal assault". Specifically, the Supreme Court said:

"In short the Court of Appeals defines criminal assault to include a requirement that 'the victim be put in reasonable fear of immediate harm'. That has not been the law of Michigan nor do we believe it to be the preferable policy."[10]

In *Sanford,* the Supreme Court also cites *Tinkler, supra,* saying that it is a civil case and that "[t]raditionally, 'the word "assault" represented an entirely different concept in criminal law than it did in the law of torts' ".[11] This recognition by the Supreme Court that definitions of assault, battery, and assault and battery, for purposes of criminal

---

[8] *Tinkler, supra,* p 402.

[9] 402 Mich 460; 265 NW2d 1 (1978).

[10] *Id.,* p 475.

[11] *Id.,* p 477, citing Perkins on Criminal Law (2d ed), Assault, p 114.

responsibility, are *not* precedents in civil cases is gratifying, because failure to recognize this distinction has caused much mischief in blurring definitions in both civil and criminal assault and battery cases. The definitions in the civil area and in the criminal area are not interchangeable.

While it can be argued persuasively that *Tinkler, supra,* stands for the proposition that a reasonable apprehension on the victim's part of an immediate battery is a necessary element of the tort of assault, *Tinkler* also requires an intentional act.[12] But, the Michigan cases have not always clearly defined whether the necessary intent is the intent to do bodily injury or simply the intent to create in the victim a reasonable apprehension of a battery, or whether either will suffice.[13]

The Restatement of Torts provides:

"§ 21. Assault
"(1) An actor is subject to liability to another for assault if
"(a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and
"(b) the other is thereby put in such imminent apprehension.

\* \* \*

"§ 32. Character of Intent Necessary
"(1) To make the actor liable for an assault, the actor must have intended to inflict a harmful or offensive contact upon the other or to have put the other in apprehension of such contact."[14]

[12] *Young v Morrall,* 359 Mich 180, 187; 101 NW2d 358 (1960); *Kangas v Aetna Casualty & Surety Co,* 64 Mich App 1, 7; 235 NW2d 42 (1975); *Cogswell v Kells,* 293 Mich 541, 545; 292 NW 483 (1940).

[13] See 2 Michigan Law & Practice, Assault & Battery, § 2, pp 529-530.

[14] 2 Restatement Torts, 2d, §§ 21, 32. Prosser, Torts (4th ed), § 10, p 41, agrees that "the intent need not necessarily be to inflict physical injury \* \* \* it is enough that there is an intent to arouse apprehension." Accord, 1 Harper & James, Law of Torts, § 3.5, p 221.

It is our inclination to adopt the above definition from the Restatement and to hold that the intent necessary to make out a tortious assault is either an intent to commit a battery or an intent to create in the victim a reasonable fear or apprehension of an immediate battery. This is presently the rule in criminal assault.[15]

While recognizing the reasons for and maintaining the distinction between civil and criminal assault and battery, we do not see any reason why there should be a more culpable standard in tort law than in criminal law.

Review of the trial court's instructions in the within case does not reveal any error in the definitions that were, in fact, given. The trial court first gave what was essentially the *Tinkler* definition. Then, in response to the jury's question concerning intent, the trial court instructed what is essentially the definition of intent set forth in the Restatement and by Prosser.

Defendant complains that there was not any evidence of plaintiff's "apprehension of an immediate battery" and that, thus, plaintiff failed to make out a necessary element of assault. Since, in the within case, the fact of the touching is not disputed, defendant seems to be saying that there has been a battery without an assault. We reject such an analysis. Defendant forgets that the jury was just as entitled to believe plaintiff's version of the event as his.

Prosser has said:

"In the ordinary case, both assault and battery are present; it is an assault when the defendant swings his fist to strike the plaintiff, and the plaintiff sees the movement, a battery when the fist comes in contact

---

[15] *Sanford, supra.*

with the plaintiff's nose. The two terms are so closely associated in common usage that they are generally used together, or regarded as more or less synonymous. * * * It is not accurate to say that 'every battery includes an assault,' but in practice the difference between the two is often entirely ignored." (Footnote omitted.)[16]


Tinkler, supra, in quoting CJS, seems to treat assault and battery as synonymous.

While the granting of a new trial is within the discretion of the trial court, where, as here, there is a clear abuse of discretion, we do not hesitate to reverse the grant of a new trial. In determining whether the trial court properly exercised its discretion, this Court inquires whether the reasons assigned by the trial court for its action are legally recognized and whether the reasons are supported by any reasonable interpretation of the record.[17]

While erroneous jury instructions are an error of law and may form the basis for granting a new trial,[18] we find no error in the instant instructions of a magnitude or kind requiring the new trial granted by the trial court.[19] We find that the trial court erred in granting a new trial on that basis, as its reasons were not legally cognizable.

As indicated, neither can it be accurately said that the jury instructions in fact given by the trial court were not supported by any reasonable interpretation of the evidence. On the contrary, the given jury instructions were supported by the

[16] Prosser, supra, p 41.

[17] Kailimai v Firestone Tire & Rubber Co, 398 Mich 230, 233; 247 NW2d 295 (1976); Benmark v Steffen, 9 Mich App 416, 422; 157 NW2d 468 (1968).

[18] Herzberg v Knight, 289 Mich 29; 286 NW 145 (1939).

[19] We do not necessarily approve or recommend all of the trial court's jury instructions.

evidence. Consequently, we reverse the grant of new trial and reinstate the judgment on the jury verdict.

Reversed and judgment for plaintiff reinstated.