859 F.2d 153
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
MANAGEMENT ALTERNATIVES, LTD., A Michigan Corporation,
Plaintiff-Appellee,
v.
Michael C. HUCKABY, Defendant-Appellant.
 No. 86-1399.
 United States Court of Appeals, Sixth Circuit.
 Sept. 30, 1988.
 
 Before ENGEL, KEITH and ALAN E. NORRIS, Circuit Judges.
 PER CURIAM:
 
 
 1
 Defendant, Michael C. Huckaby ("Huckaby"), appeals from the order of the district court denying his motions for new trial and for judgment notwithstanding the verdict entered against him in this diversity action filed by Management Alternatives, Ltd. ("Management Alternatives") for breach of fiduciary and/or good faith duties and intentional interference with an advantageous business relationship. For the following reasons, we AFFIRM.
 
 I.
 
 2
 Management Alternatives is a Michigan corporation which offers consulting services to businesses throughout the country. Huckaby was an employee of Management Alternatives who worked under the supervision of Joseph Hennessey, Jr. ("Hennessey"). In 1981, three years prior to their employment by Management Alternatives, Hennessey and Huckaby formed a corporation called Control and Management, Inc. This prior relationship between Hennessey and Huckaby had been disclosed in full to Management Alternatives.
 
 
 3
 In 1984, Management Alternatives secured a consulting contract with E.W. Saybolt & Co. ("Saybolt"), a New Jersey corporation. In April, after several weeks of preliminary analysis, Management Alternatives presented a thirty-six week project proposal to Saybolt's board of directors which was accepted. Essentially, Management Alternatives proposed a systems and management control program designed to increase efficiency and productivity; the proposal did not anticipate a reorganization of Saybolt by the Management Alternatives team. On April 23, 1984, Management Alternatives began work on the project. Hennessey worked as the project manager in New Jersey and Houston, where Saybolt maintained an office. Huckaby worked under Hennessey but at the Houston office.
 
 
 4
 On May 31, Huckaby attended a meeting in New Jersey with Hennessey, Saybolt personnel, and several other Management Alternatives employees assigned to the Saybolt project. The subject matter of that meeting concerned a reorganization of Saybolt--a point which Huckaby now concedes. At trial, Huckaby testified that he could not remember being at the meeting.
 
 
 5
 On June 8, Management Alternatives employees assigned to the Saybolt project, including Huckaby and Hennessey, met with Management Alternatives upper management and held a layout review, or status, meeting in New Jersey, at which upper management criticized the teams for delays. On June 11, Huckaby returned to New Jersey, spending the day at Saybolt. Huckaby testified that he was instructed to return by a member of Management Alternatives' upper management, James Mell; Management Alternatives presented testimony that Huckaby's presence was unexplained, and that Huckaby spent most of the day in Saybolt's conference room with Huckaby and co-defendant Doug Szygenda. Later that day, Hennessey resigned from Management Alternatives.
 
 
 6
 On June 12, Saybolt informed Management Alternatives that Saybolt intended to terminate the project, giving as its reason that Management Alternatives had transferred co-defendant Doug Szygenda from the project after the layout review meeting. On June 17, Huckaby was told by Management Alternatives that he had been fired. The next day, on June 18, Hennessey hired Huckaby to work for him in an independent consulting relationship for Saybolt.
 
 
 7
 Management Alternatives filed this action on September 17, 1984, against Hennessey, Huckaby, and Szygenda. The complaint alleged that all three had breached their fiduciary duty to Management Alternatives (Count I); that all three had conspired to interfere and did interfere with an advantageous business relationship between Management Alternatives and Saybolt (Count II); that all three breached their implied contracts of employment by failing to act in good faith toward Management Alternatives' interests (Count III); and that Hennessey filed misleading, false and fraudulent travel vouchers for reimbursement by Management Alternatives (Count IV).
 
 
 8
 At trial, Huckaby accepted representation by the attorney hired by Hennessey; that same attorney ended up representing all three defendants. At the close of the proofs all defendants moved for directed verdicts; those motions were granted as to all counts for Szygenda and denied as to Hennessey and Huckaby. At that time, the trial court decided to combine Counts I and III and submit them to the jury as a breach of good faith and/or fiduciary duty tort. In addition, plaintiff withdrew the conspiracy element of Count II.
 
 
 9
 On November 26, 1985, the jury, having received the charge, returned a verdict for Management Alternatives on Counts I/III and II,[1] and assessed joint and several liability at $529,314.50. Huckaby's motions for new trial and for JNOV were denied. This appeal followed.
 
 II.
 
 10
 As this is a diversity case, we look to Michigan law for the proper standards to be used when considering a motion for JNOV and when reviewing the denial of such a motion. Rhea v. Massey Ferguson, Inc., 767 F.2d 266, 269 (6th Cir.1985). Michigan courts have agreed that:
 
 
 11
 A judgment n.o.v. on defendant's motion is appropriate only if the evidence is insufficient as a matter of law to support a judgment for the plaintiff. In reviewing a motion for judgment n.o.v., the Court must give the nonmoving party the benefit of every reasonable inference that could be drawn from the evidence. If reasonable minds could honestly disagree as to whether the plaintiff has satisfied his burden of proof or the necessary elements of his cause of action, judgment n.o.v. for the defendant is improper.
 
 
 12
 Cormack v. American Underwriters Corp., 94 Mich.App. 379, 382-83, 288 N.W.2d 634, 636 (1979). On appeal, Michigan courts apply the same standard. See Wilson v. Chesapeake & Ohio Ry. Co., 118 Mich.App. 123, 133, 324 N.W.2d 552, 556 (1982).
 
 
 13
 Although Management Alternatives' proofs are by no means the strongest to survive a motion for JNOV, we cannot say that, given the benefit of every reasonable inference, reasonable minds could not disagree as to whether Management Alternatives satisfied its burden. Testimony was offered that placed Huckaby at a meeting in New Jersey at which reorganization of Saybolt was discussed. Throughout, Management Alternatives' position was that reorganization was outside of the scope of its engagement; testimony, as well as the proposal letter, was offered to that effect. From these facts, as the district court noted, a jury could infer that Huckaby was not acting in the interests of his employer, and that he was working to establish an independent position with Saybolt:
 
 
 14
 * * *
 
 
 15
 * * *
 
 
 16
 THE COURT: Isn't it a question of fact in that regard?
 
 
 17
 MR. WELLER: That he was present at a meeting on May 31st?
 
 
 18
 THE COURT: That he participated in a reorganizational meeting which they contend is part of the interference of the advantageous relationship.
 
 
 19
 MR. SCHOENBERGER: May it please the Court, there is nothing wrong with working on reorganization. If we assume arguendo, he was at that particular meeting.
 
 
 20
 THE COURT: You wanted to know if I knew the standard of a directed verdict and my standard, I guess, is that I must look at the evidence in the light most favorable to the plaintiff not to the defendant for purposes of this motion. If I look at in the light most favorable to the plaintiff, the light is that there is testimony, whether I find it believable or not, is not for me to determine, that they were not engaged in reorganizational aspects of this corporation.
 
 
 21
 It's one thing, as Huckaby testifies in Houston, to find out what our existing problem is, but it's another thing to redesign a whole new system and that is why I think you can read that four corners either way.
 
 
 22
 MR. SCHOENBERGER: Well--
 
 
 23
 THE COURT: So I start at the premise they weren't supposed to do it, according to Mell, that for some unknown reason Huckaby takes his ex-partner and orders him to work on it. He shows up on a May [31st][2] meeting that has nothing to do with Houston to talk about the reorganization at the meeting. From that flows this relationship that results in them picking up the business after, and then unusual patterns of the flow of money.
 
 
 24
 MR. SCHOENBERGER: I think Mr. Huckaby acknowledged being in town on that particular day. He happened to be at a meeting discussing reorganization, which is entirely appropriate and for him to be stuck in this lawsuit for that, we do not have a scintilla rule in Michigan, may it please the Court, and I believe that is a scintilla. I think this Court applies the Michigan Standard on motion for directed verdict, and I don't think the Michigan Standard--
 
 
 25
 THE COURT: I don't think that is just a scintilla because he says he doesn't remember being there and, as I remember his testimony, he has no reason to be in a corporate reorganization meeting on May 28th or 29th.[3]
 
 
 26
 MR. SCHOENBERGER: He has no recollection of being involved. It doesn't make sense and--
 
 
 27
 THE COURT: I didn't say it had to make sense. It's the testimony by Rodman who was, the jury can believe is more credible than your witness.
 
 
 28
 MR. SCHOENBERGER: They could on paper. I am hopeful that isn't the situation, may it please the Court.
 
 
 29
 THE COURT: I am only here to judge the law. Let me tell you where I think I am at. I am for dismissing Szygenda because I don't see a question of fact either in his behavior after the contract was terminated, his conduct, or if there is anything he did or did not do resulted in any damage regarding the plaintiff, and I am inclined to leave Huckaby and Hennessey in for the jury.
 
 
 30
 * * *
 
 
 31
 * * *
 
 
 32
 Transcript at 1004-6. At the very least, reasonable minds could differ on the subject. Therefore, there are no grounds to reverse the denial of Huckaby's motion for JNOV.
 
 III.
 
 33
 Essentially, Huckaby maintained that his motion for a new trial ought to have been granted because the verdict was against the great weight of the evidence. Under Michigan law, the denial of a motion for a new trial rests within the discretion of the trial court, and cannot be disturbed on appeal absent a showing of clear abuse of that discretion. Bosak v. Hutchinson, 422 Mich. 712, 737, 375 N.W.2d 333, 344 (1985). Upon review, we cannot conclude that the district court abused its discretion in denying Huckaby's motion for a new trial. Competent evidence which supports the jury's findings was introduced, as outlined in Section II, supra. Green v. Evans, 156 Mich.App. 145, 155, 401 N.W.2d 250, 255 (1985). Whether that evidence is minimal, or whether the verdict was in fact against a preponderance of the evidence, is not the issue; a verdict must be against the great weight of the evidence to support a motion for a new trial. Humphrey v. Bay Refining Co., 16 Mich.App. 394, 398, 168 N.W.2d 314, 317 (1969). Such a case is not presented here.
 
 
 34
 As a further ground for a new trial, Huckaby also asserts that the jury instructions led the jury to believe that it would not find against Hennessey without holding both responsible, and that the jury instructions were generally confusing. First, it should be noted that most of Huckaby's complaints are based on the jury instructions jointly submitted by the parties, not with those actually given. For example, the instructions on conspiracy, which Huckaby argues unfairly tie his fate with that of Hennessey, do not appear in the transcript of jury instructions. Also, Szygenda's name does not appear among the defendants in the transcript; therefore, the jury could not have been confused by its inclusion after his dismissal from the case, as Huckaby intimates.
 
 
 35
 More generally, Huckaby challenges the jury instructions as inaccurate given the proofs adduced at trial. However, under Michigan law, "[w]hile inaccurate jury instructions are an error of law and may form the basis for granting a new trial," jury instructions are not subject to attack if they are "supported by any reasonable interpretation of the evidence." Mitchell v. Daly, 133 Mich.App. 414, 428-9, 350 N.W.2d 772, 780 (1984). A review of the instructions and the proofs addressed at trial reveal no error in this regard.
 
 IV.
 
 36
 A general theme throughout Huckaby's argument is his dissatisfaction with the actions of defense counsel. Clearly, Huckaby is of the view that his defense options were materially distinct from those of Hennessey and that the linkage of his defense with Hennessey's was a factor in the judgment against him.
 
 
 37
 In fact, during his closing summation, defense counsel made some attempt to separate the two and to offer Huckaby's strongest defense--that he acted at the direction of his supervisor, Hennessey:
 
 
 38
 I would like first of all to address the fact that there are two defendants in this case, Mr. Huckaby and Mr. Hennessey. I would like to talk about Mr. Huckaby first. Mr. Weller in his closing comments barely touched upon the involvement of Mr. Huckaby in this case.
 
 
 39
 There is absolutely no proof that Mr. Huckaby ever did anything wrong in this matter. Mr. Huckaby, as you will recall, was terminated from his job. He was fired. He was let go on the Saturday following the fuss in which this job, for all we know had he not been let go he very well could have been still working for that company and discharging his responsibilities. Yet they bring him in and make him go through this lawsuit.
 
 
 40
 * * *
 
 
 41
 * * *
 
 
 42
 Mr. Weller in his closing argument that he just gave to you stated that Mr. Huckaby was there on a Monday. That is about all he said. He was there on Monday and he had this previous relationship with Mr. Hennessey, that the proofs are clear, were actually disclosed by Mr. Huckaby and even Mr. Hamm representing the plaintiff, admitted this.
 
 
 43
 He come in and makes his specific point of telling him about his self-employment, his company, that Joe Hennessey was the half-owner in the company. Mr. Hennessey had recommended Mr. Huckaby so there was no doubt by the company that the two of them did know each other and that they were in business with one another.
 
 
 44
 So what's the case against Mr. Huckaby, that they knew each other, that he appeared on a Monday at a meeting? Keep in mind that his immediate superior, this is important, was Joe Hennessey and Joe Hennessey said, "You be there on Monday." He appeared on that Monday and somehow Mr. Weller would have you believe that something evil or sinister is wrong with the fact that he appeared to follow up and do some work that Mr. Mell said needed to be done following the Friday meeting. Absolutely no proof. He discharged his responsibilities every possible way he should have and there is absolutely no proof he ever did anything wrong. He was simply let go and fired.
 
 
 45
 He followed the directions of his superior, Joe Hennessey at all times.
 
 
 46
 * * *
 
 
 47
 * * *
 
 
 48
 ... I want to point out to you there is no proof here that Mike Huckaby was involved. There isn't any proof Joe Hennessey did anything wrong either and I'm going to get to that in a minute but the Court will instruct you you can consider and should consider the defendants separately so you must keep this in mind during your deliberations.
 
 
 49
 * * *
 
 
 50
 * * *
 
 
 51
 Transcript at 1044-47. Although separate counsel perhaps could have pursued the point more aggresively without fear of jeopardizing Hennessey's defense, Huckaby's position that he followed instructions was at least raised.
 
 
 52
 In any event, even if there was a conflict which prejudiced Huckaby, it is doubtful that Michigan law allows a motion for a new trial to serve as the vehicle for remedying the wrong. In the somewhat analogous situation of incompetent counsel, Michigan courts will not grant a new trial in civil cases based on such incompetency. Everett v. Everett, 319 Mich. 475, 482, 29 N.W.2d 919, 921 (1947). Ultimately, the conflict here was created by Huckaby's decision to accept joint representation; it is not within our purview on direct review to rescue him from the consequences of that decision.
 
 V.
 
 53
 Accordingly, for the foregoing reasons, the judgment is AFFIRMED.
 
 
 
 [1]
 The jury found for Hennessey on Count IV
 
 
 [2]
 In the transcript, this date appears as May 29. However it seems clear that the trial court was referring to the May 31 meeting
 
 
 [3]
 See Note 2, supra