*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JERRY GALLUP,

        Plaintiff-Appellant,

v

SERGEANT OLIVIA MOSS-FORT,

        Defendant-Appellee,

and

BEAUMONT HOSPITAL-WAYNE,

        Defendant.

UNPUBLISHED
January 27, 2025
2:16 PM

No. 363306
Wayne Circuit Court
LC No. 19-009274-NO

Before: RIORDAN, P.J., and RICK and N. P. HOOD, JJ.

N. P. HOOD, J. (*dissenting*).

I respectfully dissent. This appeal, and my disagreement with the majority, ultimately hinges on different understandings of the elements of civil battery. Plaintiff, Jerry Gallup, appeals as of right the trial court's judgment of no cause of action against defendant, Olivia Moss-Fort,[1] following a civil jury trial for assault, battery, and intentional infliction of emotional distress. I would conclude that the trial court erred by denying Gallup's motion for a directed verdict when the undisputed evidence demonstrated that Moss-Fort committed a civil battery, which is to say an unconsented, offensive touching. See *Lakin v Rund*, 318 Mich App 127, 131; 896 NW2d 76 (2016) ("A battery is an intentional, unconsented and harmful or offensive touching of the person of another, or of something closely connected with the person."). I would also conclude that the trial court erred by denying Gallup's motion to amend the complaint to revive a claim against defendant, Beaumont Hospital-Wayne (Beaumont), for vicarious liability for that battery because

---

[1] Gallup refers to her as Sergeant Olivia Moss-Fort, a reference to a prior police rank. This suit, however, relates to her capacity as a private security guard.

there were sufficient allegations and evidence that the battery was committed within the scope of Moss-Fort's employment.

I agree with the majority's conclusion in Part VI that the trial court did not err in admitting the de bene esse deposition of Dr. Sophia Grias. Relatedly, I agree with the majority's decision to affirm the trial court's order denying the motion to amend the complaint to revive a claim of negligent hiring, retention, and training. But I agree only because at this point, i.e., after a trial, Gallup cannot establish damages. I would affirm in part, reverse in part, and remand for further proceedings.

## I. BACKGROUND

The majority opinion accurately states the background of this case. But some facts warrant amplification, particularly those related to the content of the video depicting the touching at issue.

This case started with Moss-Fort touching Gallup without his consent in June 2018. The unconsented touching did not result in injury. Gallup was a patient at Beaumont. He was there for a thumb infection.[2] Moss-Fort, a former police officer, was employed as a security guard at Beaumont. It was in her capacity as a security guard for Beaumont, and during her shift, that Moss-Fort interacted with Gallup. The touching was apparently Moss-Fort executing one of Beaumont's policies.

Shortly before the contact, Moss-Fort and her partner went to Gallup's room, responding to complaints about someone smoking inside of the hospital. Shortly before entering Gallup's room, Moss-Fort's partner activated a body-worn camera, which recorded the critical events.

Gallup was not present when Moss-Fort and her partner entered his hospital room, so they began by speaking with Shurrie Gallup, Gallup's then-girlfriend, now-wife, who was present. They asked if someone had been smoking in the room. Shurrie denied smoking in the hospital, explaining that she went outside to smoke. Moss-Fort explained that smoking in the hospital was not allowed.

Approximately 47 seconds into the video, Gallup walked into the room. Until that point, the interaction between Moss-Fort and Shurrie was civil, and Moss-Fort's conduct was professional. When Gallup entered, he walked by Moss-Fort and onto the bed, where he briefly stood over Moss-Fort before sitting cross-legged in the middle of the bed.

---

[2] In the days leading up to the incident, Gallup went to this or other hospitals several times. On June 17, 2018, he came to Beaumont Hospital, Wayne complaining of an injury to his right hand. He was discharged the same day with a diagnosis of a skin infection and an unspecified injury of his wrist, hand, and fingers. On June 20, 2018, he went to Beaumont Hospital, Dearborn with a similar complaint. He demanded pain medication and complained about the delay in treatment, ultimately leaving against medical advice. Later on June 20, 2018, he returned to Beaumont Hospital, Wayne, where he was admitted until he left following this incident.

The interaction quickly escalated. Gallup loudly interjected that there was another woman on his floor smoking. He asked if Moss-Fort was going to every other room or just his. Although Gallup appeared agitated, Moss-Fort remained composed in her responses. Approximately one minute and 14 seconds into the video, Gallup picked up his phone, which had been sitting on the bed. He positioned his phone so that it was poised to be able to record. After arguing about whether Shurrie was smoking and where Moss-Fort was checking, Gallup waived Moss-Fort away, telling her to leave and that he did not like her accusation. Gallup then asked for his "department papers," and said that he was "getting out of here."

One minute and 56 seconds into the video, Moss-Fort and her partner began to leave the room, but remained due to Gallup's recording. As they were leaving, Gallup asked for Moss-Fort's name. She identified herself as "Sergeant Moss-Fort" and said, "there's no taping on here." Moss-Fort and her partner then reentered the hospital room. She told Gallup, "I need your phone because you're not allowed to tape in here." Her partner explained that recording was prohibited in patient areas. To be clear, at this point, Moss-Fort and her partner were in Gallup's hospital room by his bed, with no other patient in the room. Two minutes and 11 seconds into the video, Moss-Fort demanded Gallup's phone. At this point, there was a discernable shift in Moss-Fort's tone. She was still professional, but she was no longer deescalating. She was commanding Gallup to give her his phone.

The unconsented touching occurred two minutes and 17 seconds into the video, when Moss-Fort reached for Gallup's phone. He refused and tried to resist. The contact between Moss-Fort and Gallup lasted between one and two seconds. Moss-Fort leaned over Gallup's bed, where he was seated, and quickly removed the phone from his left hand. Gallup and Shurrie began to swear at Moss-Fort. They became increasingly agitated before getting up and insisting on leaving.

Moss-Fort had Gallup's phone this entire time. Two minutes and 57 seconds into the video, Gallup demanded that she return his phone. Moss-Fort indicated that she would do so once she made sure the content was deleted. The body-camera footage shows Moss-Fort scrolling through Gallup's phone. Gallup then touched Moss-Fort to take his phone away from her. As he was taking it, she asked him where his recently-deleted files were. Moss-Fort and her partner then left.

On July 8, 2019, Gallup filed his complaint against defendants, alleging that in June 2018, he was admitted to Beaumont for a thumb infection. He alleged that Moss-Fort, a security officer employed by Beaumont, entered his room and accused his then-girlfriend of smoking in the hospital. According to Gallup, the verbal confrontation escalated, so he began recording the event with his cellular phone. He contended that Moss-Fort then violently removed his phone, which was connected to his finger with a "locking mechanism," from his hand and deleted the video. Gallup sought damages for "physical pain and suffering including severe pain to his shoulder and thumb," as well as "severe and permanent feelings of fear, anger, embarrassment and guilt." He raised three claims against Moss-Fort: assault (Count 1), battery (Count 2), and intentional infliction of emotional distress (Count 3). He raised two additional claims against Beaumont: negligent hiring, training, and supervision (Count 4), and ordinary negligence with reference to Beaumont's vicarious liability for Moss-Fort's conduct (Count 5). As originally pleaded, Count 5

-3-

was labeled as negligence, though it sounded in vicarious liability.[3] Gallup clarified this claim as the case proceeded.

Moss-Fort and Beaumont jointly moved for summary disposition of the fourth and fifth counts of the complaint under MCR 2.116(C)(8) and (C)(10). In the accompanying brief, defendants summarized the altercation as largely consistent with the body-camera footage. The brief emphasized Moss-Fort's professional demeanor. Defendants did not state whether Moss-Fort was acting pursuant to Beaumont's policy, or whether her conduct (i.e., seizing the phone without Gallup's consent) was within the scope of her employment, but in describing the interaction, defendants stated:

> Plaintiff vocalized that he recorded the incident, which violates the privacy rights of other patients at the hospital. Due to those privacy rights, like HIPAA, patients are barred from recording on hospital premises, except for extremely limited circumstances; circumstances in which privacy rights can be protected.

Defendants argued that summary disposition was warranted as to the fourth count because there was nothing in Moss-Fort's employment history to suggest that she would engage in assaultive conduct, and summary disposition was warranted as to the fifth count because her conduct was unforeseeable from the perspective of Beaumont. Defendants stated that "she has never exhibited any conduct other than that associated with a successful 27 years on the City of Detroit Police Department." The response to the motion did not reference whether Beaumont had a policy directing Moss-Fort to seize a patient's phone in the manner she did in this case. It also did not reference the scope of her employment or whether her conduct the day of the interaction was within or outside the scope of her employment. Rather, the entirety of the argument focused on the foreseeability of her conduct.

Gallup responded, arguing that there was evidence that Moss-Fort acted within the scope of her employment during the confrontation. Regarding Count 5 specifically, Gallup argued that Moss-Fort was acting within the scope of her employment. He cited authorities addressing vicarious liability for employers rather than some other negligence theory.

In September 2021, the trial court granted the motion, dismissing the fourth and fifth counts of the complaint, which resulted in dismissal of Beaumont from the case itself.[4] The order granting the motion did not specify whether the court was granting the motion under MCR 2.116(C)(8) or (C)(10). The order also did not state the basis for granting the motion.

---

[3] "Courts are not bound by the labels that parties attach to their claims because this would exalt form over substance. Rather, courts must consider the gravamen of the complaint or motion based on a reading of the document as a whole." *Brendel v Morris*, 345 Mich App 138, 149; 4 NW3d 776 (2023) (quotation marks and citations omitted).

[4] The register of actions indicates that the matter was discussed at a September 20, 2021 motion hearing. However, the transcript of that hearing was not provided to this Court.

There were numerous other pretrial motions.  Relevant here, in April 2022, Gallup unsuccessfully moved to amend the complaint.[5]  The proposed amendment would reintroduce the previously-dismissed claims of negligent hiring, retention, and training, and vicarious liability for the alleged assault and battery.  In his motion, Gallup argued that the trial court should grant the motion to amend because he recently received Beaumont's written policy regarding video recordings.

Gallup obtained the policy through a trial subpoena.  In anticipation of the original trial date, which was set in January 2022, Gallup served a subpoena on Beaumont for its corporate representative to testify regarding the policies from which Moss-Fort believed her authority to seize Gallup's phone derived.[6]  Moss-Fort moved to quash the subpoena.  On January 31, 2022, the trial court held a hearing, after which it denied the motion to quash and ordered Moss-Fort to produce all "written policies concerning security personnel's authority to seize a phone in protecting a patient's HIPAA rights."  On April 4, 2022, Beaumont produced a heavily-redacted version of the policy.  The reasons for the delayed production are unclear.  That policy stated, in relevant part:

> iii.  Patients and visitors may not record Beaumont Health's Workforce Members, equipment, facilities or treatment encounters.

> * * *

> vii. Workforce Members are authorized to question, stop and determine the status of any recording.  Workforce Members have the authority to ask the patient or visitor to stop recording and dispose/delete the recording if deemed inappropriate.

---

[5] Gallup challenges the trial court's decision on several other pretrial motions on appeal.  Specifically, he also challenges the trial court's granting of Moss-Fort's motion to exclude references to a civil suit involving her arrest of an induvial in 2015 and its handling of Gallup's motion in limine to preclude Moss-Fort from arguing that she was authorized by the Health Insurance Portability and Accountability Act (HIPAA), 42 USC 1320d *et seq.*, to engage in the contested conduct.  As later stated, because of my proposed handling of other issues on appeal, I would not address these arguments.

[6] Gallup argues that he requested the policy in interrogatories and accompanying production requests in 2019.  He notes that defendants refused to produce "documents related to [Beaumont's] security guard training and protocols."  None of Gallup's identified interrogatories solicited policies involving cell phone seizures.  Three interrogatories solicited policies regarding handling or removing patients (i.e., "Please state whether there are specific policies for handling or extricating patrons that are on Defendant's premises;" "Please describe the policy for security guards generally when an altercation takes place on Defendant's premises and the patron/patient needs to be escorted off the premises;" "Please state whether there are specific policies for handling or extricating patrons that are **injured** and currently on the premises.").  Yet Gallup has not identified any earlier discovery request that would have yielded the production of this policy.

viii. Workforce Members should notify Security if any patient or visitor refuses to stop recording or disposes of/deletes a recording.

According to Gallup, the policy "establishes Defendant Olivia Fort's conduct **was for the purpose of serving the employer (Beaumont) and that the conduct was foreseeable.**" (Emphasis in original.) Gallup thus asked the trial court to allow him "to Amend the Complaint against Beaumont to include negligence." Though the proposed amendment continued to refer to Gallup's claim as "negligence" against Beaumont, it further clarified that the claim sounded in vicarious liability for Moss-Fort's conduct.

In response, Moss-Fort argued that recent production of the policy did not provide a basis for the late amendment, which would reintroduce a previously-dismissed party. She observed that, during her December 5, 2019 deposition, she testified that Beaumont had a written policy essentially providing that "there is no recording on the premises or photographs on the premises." Moss-Fort argued that "[t]he information relied on by Plaintiff's counsel has been within their knowledge since then and has already been considered by the Court. As such, Plaintiff has established undue delay precluding their request to amend." She also observed that the fourth and fifth counts of the original complaint against Beaumont had been dismissed with prejudice, so the trial court should treat the instant motion as a motion for reconsideration of the earlier order granting Beaumont summary disposition, not as a motion to amend.

On June 3, 2022, the trial court denied the motion without oral argument and without explanation. Because of the lack of explanation, it is unclear whether the trial court considered Moss-Fort's argument that the trial court should treat the motion as a motion to reconsider rather than a motion to amend.

As the majority notes, there were several last-minute adjournments of previously set trial dates. In October 2021, November 2021, January 2022, and February 2022, the parties appeared for trial, but the trial court adjourned the trial date on its own motion. In April 2022, the trial court granted Gallup's motion to adjourn the trial date due his illness.

Because of the numerous adjournments, the parties agreed to conduct several de bene esse depositions.[7] These included depositions of Dr. Michael Shingles (independent medical examiner), Dr. Sophia Grias (pain management and rehabilitation physician), Dr. Hussein Saad (orthopedic surgeon), and Dr. Thomas Cerrone (psychiatrist). Though there was no stipulation to their admission, the parties appeared to agree to conduct the depositions to avoid continued inconvenience and streamline the trial. On August 29, 2022, the day before trial, the parties spent a substantial amount of time purging the de bene esse deposition transcripts in order to present them to the jury. This included the deposition of Dr. Grias. The testimony of these physicians did not support Gallup's position that the interaction with Moss-Fort caused or exacerbated an injury.

---

[7] A de bene esse deposition is a deposition taken "conditionally or provisionally in anticipation of being used in case the witness cannot afterwards be examined in court." *Warfield v City of Wyandotte*, 117 Mich App 83, 88 n 1; 323 NW2d 603 (1982).

Ultimately, the trial occurred over six days between August 30, 2022 and September 8, 2022. Gallup testified that the incident in question terrified him to the point where "I don't want to go out of the house no more," and "I have constant dreams about this incident." He said that he did not give Moss-Fort consent to take his cellular phone, and that when she removed the phone from his hand, "[i]t felt like a rip and a tear" that injured his shoulder, arm, and hand.

On cross-examination, Gallup acknowledged that the complaint and his deposition testimony contained factually incorrect statements. For example, the complaint alleged that Moss-Fort "ran across the room and leapt into [his] bed," but the body-camera footage did not show any conduct by Moss-Fort remotely resembling this allegation.[8] As another example, Gallup essentially testified in his deposition that Moss-Fort removed his cellular phone from his hand with "a military style twist with three yanks," but again, the body-camera footage did not show such conduct by Moss-Fort. As yet another example, Gallup testified in his deposition that Moss-Fort "became a raging killing machine, on a scale of 1 to 10, she was like a 20." When defense counsel asked him whether the video supported his statement, Gallup replied that "the way that the video showed it, that's, it didn't happen to me like that, okay."

Also on cross-examination, Gallup acknowledged that he did not stop recording the incident with his cellular phone despite the fact that Moss-Fort and her partner told him that recording was not allowed. Further, Gallup acknowledged, over objection from his counsel to the question, that no criminal charges resulted from the incident despite the fact that he made a police report.[9]

Moss-Fort also testified. On direct examination, she stated that she entered the hospital room occupied by Gallup and his wife to inform his wife that "[i]f she's caught smoking in the hospital she would be asked to leave."[10] Moss-Fort testified that she "thought" she had the right to remove Gallup's cellular phone from his hand to delete his video recording because "there's no

---

[8] The body-camera video was admitted as Trial Exhibit 16. The parties, particularly Moss-Fort, repeatedly referenced the footage during trial. On appeal, Moss-Fort argues that, "the video demonstrates that Appellant's entire claim was fabricated." As described, I have reviewed the video and agree that it does not show Moss-Fort acting in a violent or unreasonably aggressive manner, or in any way remotely consistent with Gallup's allegations or deposition testimony. It does, however, document an unconsented touching.

[9] According to Gallup's counsel during the objection, "[w]e had a motion hearing where we had a conversation with this, the lack of criminal charges or criminal charges in this case or convictions in this case are completely different standards, as a result of that you indicated that unless I opened the door to it we weren't gonna get into it." I cannot identify a transcript in the record verifying this statement, but it was unopposed by the trial court and defense counsel at the time, so I reasonably may assume that it is accurate.

[10] Moss-Fort explained that "[a]s I walked into the room there was a strong smell of smoke in the room, and the information that I had prior to going inside the room was that the visitor for that room was the one possibly smoking."

recording inside the hospital anywhere."[11]  When asked by Gallup's counsel whether she was "relying on any particular policy at Beaumont to take that phone," Moss-Fort replied that "they have signs posted that there's no videotaping or photography in the hospital."  Moss-Fort added that "I was to protect the rights of the patients and safety of the staff."  She acknowledged that her own body camera was turned off when she removed the phone from Gallup's hand, as she mistakenly did not turn it on beforehand.

On examination by defense counsel, Moss-Fort testified that patients and visitors are not allowed to record inside the hospital because "they would videotape or take pictures of people that are there in the hospital to be treated.  Also we [sic] threats and things to the medical staff, so all that for the safety of the staff as well as patients is our concerned [sic]."  When defense counsel reviewed the body-camera video with Moss-Fort, she testified that she was able to remove the cellular phone "straight out" because it was not attached to a ring socket on Gallup's finger, that she did not believe that she applied sufficient force to injure Gallup, and that she deleted the video recorded by Gallup without looking at any other material on his phone.

The following day of trial, Gallup briefly presented testimony from his son, as well as the de bene esse depositions of Dr. Saad and Dr. Cerrone.  The parties made no specific showing that Dr. Cerrone or Dr. Saad were unavailable at trial.  Rather, Gallup played Dr. Saad and Dr. Cerrone's testimony apparently based on the parties' agreement.  Gallup's counsel then informed the trial court that he was not going to present the de bene esse deposition of Dr. Grias because "it's cumulative, her records are already in evidence."[12]  Gallup's counsel added that Moss-Fort could not rely on the de bene esse deposition of a witness identified as testifying on behalf of an opposing party, at least where Moss-Fort "did not file a notice of reliance on that de bene esse dep."  Defense counsel replied that Dr. Grias was on the respective witness lists of both Gallup and Moss-Fort, so he had a right to present her deposition.  The trial court ruled that Moss-Fort could present Dr. Grias's deposition.

Notably, the testimony of these physicians did not support Gallup's position that Moss-Fort's conduct caused an injury or otherwise exacerbated an existing condition.  Grias's testimony indicated that years before the June 2018 incident, Gallup was in a serious motor vehicle collision. As a result, he suffered serious injuries to his neck, back, and shoulder.  Dr. Grias, his treating physician, addressed his complaints of back pain, neck pain radiating into his arms, and shoulder pain.  She ultimately recommended that Gallup undergo an MRI of his shoulder.  In 2015, Gallup had an MRI, which revealed a cystic structure with an associated labral tear.  Dr. Grias referred Gallup to an orthopedic surgeon to address the labral tear.

Notably, Dr. Grias testified that the interaction with Moss-Fort likely did not cause his shoulder injury.  Regarding his shoulder injury she testified:

---

[11] Limited recording is allowed in the maternity ward.

[12] The transcript refers to "Dr. Rice," but that appears to be a spoken or typographical error, as the context indicates that Gallup's counsel intended to refer to Dr. Grias.

I don't have a specific thing. I mean -- I mean, he was working for a while, and who know, it could have happened there. We had to stop him off of work because he couldn't tolerate it. I mean, I have no idea what actually caused it.

Just in my honest opinion, I -- I mean, I love Mr. Gallup and -- but it just didn't look like it to me that that caused it.

At trial, they also played the deposition testimony of Dr. Hussain Saad. In 2015, Gallup began seeing Dr. Hussain Saad, who treated his right shoulder pain. Dr. Saad reviewed Gallup's prior MRIs and found numerous complex issues. He advised Gallup about performing an arthroscopic superior-labrum-anterior-to-posterior repair due to the labral tear. Gallup opted not to have surgery at the time. Dr. Saad did not attribute Gallup's continuous physical issues with the incident. He testified:

So there are no findings in his MRI that were caused by the security guard incident. And like I said, we don't operate on an image, we operate on a patient. So the patient's pain level is what - - what make someone choose surgical or nonsurgical treatment. But the findings seen on the MRI were not caused by the incident at Beaumont Hospital.

Gallup's wife testified that Moss-Fort seriously injured his hand and that he suffered ongoing emotional distress from the incident. On cross-examination, defense counsel elicited testimony indicating that she stated at her deposition that Moss-Fort jumped on Gallup and that Gallup started screaming, "help me." Gallup's wife acknowledged that the body-camera video did not show the occurrence of such events.

At the close of proofs the following day, Gallup moved for a directed verdict on the battery claim, the fact that he sustained an injury, and the intentional inflectional of emotional distress claim. He did not move for a directed verdict on the assault claim. The trial court denied the motion. Ultimately, the jury returned a verdict in favor of Moss-Fort on all three counts after about 30 minutes of deliberation.

This appeal followed.

## II. DIRECTED VERDICT ON ASSAULT AND BATTERY CLAIMS

Our most critical point of disagreement relates to how to handle the verdict on battery. Gallup argues that the trial court erred by denying his motion for a directed verdict on the respective assault and battery claims.[13] I would agree as it relates to battery because there is

---

[13] Because Gallup did not move for a directed verdict on his assault claim, that aspect of his argument is waived. See *Napier v Jacobs*, 429 Mich 222, 227-228; 414 NW2d 862 (1987). See also *Molitor v Burns*, 318 Mich 261, 263-265; 28 NW2d 106 (1947) (failure to renew motion for directed verdict close of defendant's case waived any error); *Garabedian v William Beaumont Hosp*, 208 Mich App 473, 475; 528 NW2d 809 (1995).

undisputed evidence that civil battery occurred. Civil battery requires intent to commit an offensive touching, but it does not require intent to *harm*. See *Tinkler v Richter*, 295 Mich 396, 401; 295 NW 201 (1940) ("A battery, or assault and battery, is the willful touching of the person of another by the aggressor or by some substance put in motion by him . . ."). See also *Mitchell v Daly*, 133 Mich App 414, 425; 350 NW2d 772 (1984) ("We do not interpret *Tinkler* to require that an intent to do harm on the part of a defendant in an assault and battery case is a prerequisite of liability. With respect to the questions certified by the trial court and parties to this Court, we hold that, under the facts of this case, the plaintiff was not obligated to establish that the defendant intended to harm the plaintiff in order to succeed with his suit for assault and battery.");[14] M Civ JI 115.02 ("A battery is the willful or intentional touching of a person against that person's will by another.").[15] There does not appear to be any dispute about whether Moss-Fort willfully (or intentionally) touched Gallup against his will. Even if Gallup misremembered, exaggerated, or outright lied about her conduct, the video documents the intentional, offensive (i.e., nonconsensual) touching. Because civil battery does not require an intent to harm, there is no dispute that the elements were satisfied.

This Court reviews de novo a trial court's decision regarding a directed verdict. *Krohn v Home-Owners Ins Co*, 490 Mich 145, 155; 802 NW2d 281 (2011). MCR 2.516 provides that "[a] party may move for a directed verdict at the close of the evidence offered by an opponent. The motion must state specific grounds in support of the motion." "A directed verdict is appropriate only when no factual question exists upon which reasonable minds could differ." *Anaya v Betten Chevrolet, Inc*, 330 Mich App 210, 215; 946 NW2d 560 (2019). "In reviewing a directed verdict, we review all the evidence presented up to the time of the motion to determine whether a question of fact existed." *Id.* "In deciding whether a directed verdict is appropriate, the trial court must view the testimony and all legitimate inferences from the testimony in the light most favorable to the nonmoving party; we review the evidence in the same manner." *Id.* at 215-216.

The trial court erred by denying the motion for a directed verdict because there was no factual dispute about the willful offensive touching. See *Mitchell*, 133 Mich App at 425.

A claim for battery vindicates an individual's right to be "free from nonconsensual physical invasions" of their person. See *In re Rosebush*, 195 Mich App 675, 680; 491 NW2d 633 (1992). This is reflected in our pattern jury instruction, which provides that a "battery is the willful or

---

[14] Although *Mitchell* is not strictly binding pursuant to MCR 7.215(J)(1) because it was issued before November 1, 1990, as a published opinion, it nevertheless "has precedential effect under the rule of stare decisis" pursuant to MCR 7.215(C)(2). See *Wells Fargo Rail Corp v Dep't of Treasury*, 344 Mich App 351, 372 n 3; 1 NW3d 373 (2022).

[15] By contrast, criminal battery requires intent to injure or harm. See *Lakin*, 318 Mich App at 129, 130-132 ("Michigan requires proving the 'intent to injure in order to establish an assault and battery,' " in the context of a claim of per se defamation, where the claim of defamation was a statement regarding "the criminal offense of battery"). See also *People v Datema*, 448 Mich 585, 599; 533 NW2d 272 (1995). See also *People v Gardner*, 402 Mich 460, 477; 265 NW2d 1 (1978) (quotation marks omitted) ("Traditionally, the word assault represented an entirely different concept in criminal law than it did in the law of torts.").

intentional touching of a person against that person's will by another." M Civ JI 115.02, citing *Tinkler*, 295 Mich 396 (bracket omitted). Functionally, this breaks down into three elements. First, the defendant *touched* the plaintiff. See *Tinkler*, 295 Mich at 401. The touch may be against the plaintiff's person or, as alleged in this case, something they are holding. See *Espinoza v Thomas*, 189 Mich App 110, 119; 472 NW2d 16 (1991) ("[p]rotection of the interest in freedom from unintentional and unpermitted contacts with the plaintiff's person extends to any part of his body or to anything which is attached to it and practically identified with it."). Second, the touch was *offensive*. See *id.* ("[a] battery is the wilful and harmful or offensive touching of another person . . ."). In extreme situations, this may include a harmful or violent touch, see *id.*, but it can be as simple as an *unconsented* touch. See *id.* Third, the defendant must have *intended to cause the offensive touch*. The intent required to establish a battery was intent to cause the offensive or unconsented touching, not intent to harm. See *Mitchell*, 133 Mich App at 424 (interpreting *Tinkler*'s assault and battery definitions to hold "When the trial judge says, as he did, that the jury should have been told that there must have been an intent on the part of the defendant to do harm, the trial judge was in error. This is not a requisite in every civil assault and battery case."). But see *Lakin*, 318 Mich App at 131 ("Michigan requires proving the 'intent to injure in order to establish an assault and battery,' " quoting *Datema*, 448 Mich at 599, a case involving criminal assault and battery resulting in manslaughter).

There is no real dispute that Gallup satisfied the first and second elements: (1) that Moss-Fort touched him; and (2) that the touch was unconsented. Acknowledging Gallup's serious credibility issues, the body-camera footage conclusively demonstrates that Moss-Fort touched him or his phone without his consent. Whether a juror believed that Gallup misremembered the interaction, intentionally exaggerated the nature of their interaction, or outright lied, the video illustrates that Moss-Fort intentionally and physically took Gallup's phone out of his hand without his consent. This is sufficient to establish the first two elements of a battery. And depending on which of our authorities one relies upon, it is sufficient to establish the third element: intent. See *Mitchell*, 133 Mich App at 424-426.

Intent is the only dispute. And that dispute arises out of an inconsistency in (or misapplication of) our precedent. As stated, originally, Michigan did not require intent to injure or intent to harm as an element of civil battery. See *Mitchell*, 133 Mich App at 424-426. See also *Tinkler*, 295 Mich at 402. This is reflected in our jury instructions. See M Civ JI 115.02.

Regarding *civil* battery, this court has unequivocally stated that "[w]e do not interpret *Tinkler* to require that an intent to do harm on the part of a defendant in an assault and battery case is a prerequisite of liability." *Mitchell*, 133 Mich App at 425. In *Mitchell*, this Court reversed the trial court's order granting the defendant a new trial after a jury verdict for the plaintiff on a civil assault and battery allegation. *Id.* at 415. There, the plaintiff claimed that while under the defendant-doctor's care, the defendant struck him on the left side of his head, hitting his face and ear during an argument. *Id.* at 415-416. After jury instruction, but before trial, the trial court instructed the jury on assault and battery as follows:

> An assault is an intentional, unlawful offer or attempt to cause bodily jury [sic] to another by force.

A battery is the willful touching of the person by another—pardon me—the person of another by the agressor [sic] and is the consummation of an assault." [*Id*. at 416.]

Following trial, the court further instructed the jury stating, "The offense charged by the plaintiff against the defendant is assault and battery. An assault is an intentional, unlawful offer or attempt to cause bodily injury to another by force. A battery is the willful touching of the person of another by the agressor [sic] and is the consummation of an assault." *Id*. at 416. On appeal, this Court considered whether "the use of the words 'beat', 'wound' and 'bruise' placed an incorrect burden upon the plaintiff." *Id*. at 422. This Court concluded that it did. *Id*. at 423-425. Relying on *Tinkler*, this Court concluded that the reasonable meaning attributed to these words placed additional burden on the plaintiff. *Id*. This Court concluded, "When the trial judge says, as he did, that the jury should have been told that there must have been an intent on the part of the defendant to do harm, the trial judge was in error. This is not a requisite in every civil assault and battery case." *Id*. at 424. This Court went on to parse out the portions of our precedent that rely on criminal assault and battery principles and those that rely on civil principles. *Id*. at 425-427 ("This recognition by the Supreme Court that definitions of assault, battery, and assault and battery, for purposes of criminal responsibility, are not precedents in civil cases is gratifying, because failure to recognize this distinction has caused much mischief in blurring definitions in both civil and criminal assault and battery cases. The definitions in the civil area and in the criminal area are not interchangeable.").

Thus, relying on *Mitchell* and *Lakin*, I would reiterate our well-settled principle that intent to harm is not required. Rather, intent to touch without consent is required. If that was the only issue in dispute at trial, the video seems to demonstrate that Moss-Fort intentionally touched Gallup without his consent, thus satisfying the requirements for a civil battery.

The majority incorrectly relies on *Lakin* for the position that battery requires intent to harm. The reliance on *Lakin* is misplaced for at least two reasons. First, *Lakin* did not directly deal with battery; it dealt with defamation. *Lakin*, 318 Mich App at 129. There, the plaintiff, a church member, alleged that the defendant, a nun, defamed him by telling the monsignor that he put a finger in her chest during a confrontation about church assignments. *Id.* at 129-130. He contended that her statement "imputed the *criminal* offense of battery; therefore, it was defamatory per se." *Id.* at 130 (emphasis added).

This leads to the second problem with relying on *Lakin*: to the extent *Lakin* analyzed the elements of battery, it analyzed the elements of *criminal* battery, not civil battery. See *Lakin*, 318 Mich App at 131-132. See also *Mitchell*, 133 Mich App at 426-427 (holding that the definitions of civil battery and criminal battery are not interchangeable). In *Lakin*, relying almost exclusively on criminal precedents, this Court defined a battery as follows: "A battery is an intentional, unconsented and harmful or offensive touching of the person of another, or of something closely connected with the person." *Lakin*, 318 Mich App at 131, quoting *People v Reeves*, 458 Mich 236, 240 n 4; 580 NW2d 433 (1998). Relevant here, it clarified, "While the common law did not require proof of intent, Michigan requires proving the 'intent to injure in order to establish an assault and battery.' " *Lakin*, 318 Mich App at 131, quoting *Datema*, 448 Mich at 599 (upholding a manslaughter conviction for a battery resulting in death, in part, because criminal assault and battery, though a misdemeanor, "requires proof of an intent to injure in order to establish an assault and battery;" noting that under the common law, assault and battery "did not require an intent to

-12-

injure.").[16]  In short, *Lakin*'s statement that battery requires an intent to harm or intent to injure is a recitation of the requirements for criminal battery, not civil.  Compare *Lakin*, 318 Mich App at 131 with *Mitchell*, 133 Mich App at 426-427.

The majority's reliance on this portion of *Lakin* to hold that there was a question regarding intent to injure is incorrect.  Instead, relying on *Mitchell* and *Tinkler*, the trial court likely should have found that the evidence unequivocally demonstrated that Moss-Fort intended to cause a touching against Gallup's consent.  This is enough.  And this is true even if Gallup's description of the interaction varies wildly from the video-recorded encounter.

This brings me to the issue of damages.  Although the evidence conclusively established a civil battery, Gallup at best can only establish nominal damages.  As the majority correctly concludes, the de bene esse deposition testimony and medical record evidence conclusively established that Moss-Fort's conduct did not cause or contribute to Gallup's years-long issues with his hand and shoulder.  This Court has previously observed that that proof of damages is not an essential element of assault and battery.  *Lewis v Ypsilanti Police Dep't*, unpublished per curiam opinion of the Court of Appeals, issued November 16, 2001 (Docket No. 223352), p 1.[17]  And damages are also not included in the definition of battery addressed in *Tinkler* and *Lakin*.  It is possible for Gallup to have obtained a directed verdict on battery and obtain only nominal damages.  See *Lewis*, unpub op at 1.  Therefore, while Gallup was entitled to a directed verdict on battery, he would have only been entitled to nominal damages.  I would vacate the judgment related to battery, remand for the trial court to enter judgment in his favor, and address the question of what, if any, damages Gallup is entitled to for the technical battery in this case.

### III.  MOTION TO AMEND THE COMPLAINT

Gallup also argues that the trial court erred by denying his motion to amend his complaint to add an allegation supporting his dismissed claims sounding in vicarious liability (Count 5) and negligent hiring, training, and supervision (Count 4) against Beaumont.  Specifically, he argues that he should have been allowed to amend his complaint to include a factual allegation that Beaumont had a written policy generally prohibiting video recording by patients and visitors.  I

---

[16] Notably, in *Lakin*, although the court stated the criminal battery standard, *Lakin*, 318 Mich App at 131, it appeared to apply the standard for civil battery, in other words, not involving an intent to injure, see *id*. at 131-132.  The plaintiff alleged that the defendant-nun claimed that the plaintiff "put a finger in her chest."  *Id.* at 131.  This Court observed, "Placing one's finger in the chest of another, especially a nun, during an argument, can reasonably be seen as an offensive touching."  *Id*. at 132.  The Court continued to analyze whether the alleged touching was "offensive," not whether it was intended to harm.  *Id.*  Although the quotation from *Lakin* would require intent to injure, the analysis from *Lakin* does not.  See *id*.

[17] "Although MCR 7.215(C)(1) provides that unpublished opinions are not binding under the rule of stare decisis, a court may nonetheless consider such opinions for their instructive or persuasive value."  *Cox v Hartman*, 322 Mich App 292, 307; 911 NW2d 219 (2017).

agree as it relates to Count 5, but disagree as it relates to Count 4. Regarding Count 4, I agree with the majority opinion's outcome, but for different reasons.

"This Court reviews a trial court's decision to permit a party to amend its pleadings for an abuse of discretion." *In re Kostin Estate*, 278 Mich App 47, 51; 748 NW2d 583 (2008). "[A]n abuse of discretion occurs only when the trial court's decision is outside the range of reasonable and principled outcomes." *Id*.

Generally, "a party may amend a pleading only by leave of the court or by written consent of the adverse party. Leave shall be freely given when justice so requires." MCR 2.118(A)(2). "If the trial court grants a party's motion for summary disposition under MCR 2.116(C)(8), (9), or (10), the trial court shall give the parties an opportunity to amend the pleadings 'unless the evidence then before the court shows that amendment would not be justified.' " *Zwiker v Lake Superior State Univ*, 340 Mich App 448, 484; 986 NW2d 427 (2022), quoting MCR 2.116(I)(5). "The trial court need not give a party an opportunity to amend a pleading if the amendment would be futile." *Zwiker*, 340 Mich App at 484. "An amendment is futile where, ignoring the substantive merits of the claim, it is legally insufficient on its face." *Id*. (quotation marks and citation omitted). "A proposed amendment is also futile if summary disposition would be appropriately granted regarding the new claims, either when a party has not established a genuine issue of material fact regarding an element, or when the undisputed facts establish that summary disposition would be appropriate." *Id*. (citations omitted).

Here, at the time of the request, the amendment was not futile. Rather, with previously-requested, but newly-obtained, evidence in hand, Gallup attempted to revive two counts that the trial court should not have dismissed in the first place: negligent hiring, retention, and training (Count 4), and vicarious liability for the battery (Count 5).[18] The crux of Gallup's allegation in the amended complaint (as in the original complaint) was that Beaumont was liable because Moss-

---

[18] At the threshold, I must acknowledge the awkwardness of addressing this issue as Gallup frames it. Earlier in the proceedings, the trial court dismissed the fourth and fifth counts of the original complaint against Beaumont, and thus dismissed Beaumont from the case. Gallup did not move to reconsider. Gallup then brought allegedly new information to the trial court—in particular, the written policy regarding video recordings. According to Gallup, this written policy sustains his fourth and fifth counts. Although the question of the denied motion to amend is not waived, under these circumstances, he should have moved for reconsideration, which applies when new information is discovered after summary disposition has been granted. See, e.g., *Churchman v Rickerson*, 240 Mich App 223, 233; 611 NW2d 333 (2000); *Am Transmission, Inc v Channel 7 of Detroit, Inc*, 239 Mich App 695, 709-710; 609 NW2d 607 (2000). See also MCR 2.119(F)(3). Had he moved for reconsideration, the trial court would have been required to grant relief because it clearly erred by dismissing the claims in the first place. As later discussed, aside from the timing of this decision—i.e., posttrial and after, the question of damages is largely resolved—the outcome should be the same. Count 5 (vicarious liability for battery) is revived. And but for the issue of damages, Count 4 (direct negligence for hiring, retention, and training) would be too. I address each count in turn.

-14-

Fort's allegedly tortious conduct was within the scope of her employment, and alternatively, that it was otherwise foreseeable.

## A. VICARIOUS LIABILITY

First, the trial court incorrectly granted summary disposition on Gallup's vicarious-liability claim against Beaumont (Count 5) and later, as Gallup claims on appeal, incorrectly refused to allow Gallup to amend the complaint.[19] Acknowledging that Gallup's proposed amendment was in the late stages of the case, it was not dilatory. Rather, it appears to be the cumulative result of the trial court's initial erroneous grant of summary disposition, defendants' delay in responding to discovery requests that arguably encompassed Beaumont's policy, and ultimately defendants' delay in producing Beaumont's policy. In short, as originally pleaded, Moss-Fort's conduct was within the scope of her employment. Moss-Fort's deposition testimony, that she was acting pursuant to Beaumont's policy, later supported this claim. Later still, Beaumont's compelled disclosure of its policy further supported the claim. The trial court initially incorrectly focused only on foreseeability rather than scope of employment. It should have corrected this error by granting Gallup's request to amend. I would therefore reverse to allow Gallup to amend to include Beaumont as alleged in Count 5.

This Court recently outlined the standards for holding an employer vicariously liable for a battery committed by an employee-security guard in an unpublished opinion. See *Harris v Gates*, unpublished per curiam opinion of the Court of Appeals, issued May 30, 2024 (Docket No. 359672), pp 4-8. That case synthesized the standards for vicarious liability for an intentional tort in similar, albeit more egregious, circumstances to this case. See *id*. at 5-10.

There, a private security officer for an apartment complex shot and killed a suspected trespasser while trying to remove him from the complex. *Id.* at 1-2. The defendant security guard stated that he responded to the trespasser as part of his job duties and that his employer encouraged him to carry a gun. *Id*. at 2-3. This Court affirmed the trial court's denial of summary disposition, concluding that the trial court correctly determined that there was a question of fact as to whether the battery (i.e., the shooting) was within the scope of his employment, and that the trial court did not need to address the issue of foreseeability. *Id.* at 5-9.

In doing so, this Court observed that there are two ways in which an employer may be held vicariously liable for the torts of its employee: "(1) when the conduct falls with the scope of the employment, [*Hamed v Wayne Co*, 490 Mich 1, 11; 803 NW2d 237 (2011)]; or (2) when the conduct falls outside of the scope of the employment, but is nonetheless foreseeable, [*id*. at 12]." *Harris*, unpub at 5-6. Here, the trial court and Moss-Fort appear to focus on the second of these two bases, and ignore the issue of whether Moss-Fort's conduct was within the scope of her employment.

Regarding scope of employment, in *Harris* this Court stated:

---

[19] Again, I acknowledge that Gallup continued to refer to this claim as "negligence" despite the apparent allegation sounding in vicarious liability.

"The doctrine of respondeat superior is well established in this state: An employer is generally liable for the torts its employees commit within the scope of their employment." *Hamed*, 490 Mich at 10-11 (citations omitted). Our Supreme Court has defined "within the scope of employment to mean engaged in the service of his master, or while about his master's business." *Id*. at 11 (quotation marks omitted). On the other hand, when an employee engages in "independent action, intended solely to further the employee's individual interests" they are not acting within the scope of employment. *Id.*, citing 2 Restatement Agency, 3d, § 7.07, p 201. See also *Bryant v Brannen*, 180 Mich App 87, 98; 446 NW2d 847 (1989). But when an employee acts contrary to an employer's instruction, liability will still attach "if the employee accomplished the act in furtherance, or [in] the interest, of the employer's business." *Hamed*, 490 Mich at 11. See also *Barnes v Mitchell*, 341 Mich 7, 15-16; 67 NW2d 208 (1954) ("The servant is within the scope of his employment when he is engaged in the master's service and furthering the master's business though the particular act is contrary to instructions."). The question, therefore, is whether at the time of the conduct, the employee had the employer's business in mind. See *Cook v Michigan Central R*, 189 Mich 456, 459-460; 155 NW 541 (1915) (holding that there was a jury question on scope of employment, where a night watchman shot and killed the plaintiff's decedent while attempting to remove decedent from the defendant-employer's railyard). Regarding the inquiry into scope of employment, our Supreme Court has stated:

The purpose of the service rendered by the employee, and not the method of performance, is the test of whether or not the servant is within the scope of his employment. If the purpose is to further the master's business and not that of the servant, the latter is within the scope of his employment though he be negligent or disobeys orders as to the method of its execution." [*Barnes*, 341 Mich at 16 (quotation marks omitted).]

The Court also recognized the rationale for this test: "If it were true that a servant is outside the scope of his employment whenever he disobeys the orders of his master, the doctrine of respondeat superior would have but scant application, for the master could always instruct his servant to use ordinary care under all circumstances." *Id.* at 15 (quotation marks omitted). [*Harris*, unpub op at 6.]

Relying on those principles in the context of security guards, "[i]t is also the rule that if the servant uses more force than he was authorized to use in evicting a party from his master's premises, the master is liable." *Stewart v Napuche*, 334 Mich 76, 79; 53 NW2d 676 (1952). See also *Cook*, 189 Mich at 462. "An act may be within the scope of employment although consciously criminal or tortious." *Bryant*, 180 Mich App at 100, quoting 1 Restatement Agency, 2d, § 231, p 512.

In fact, a consciously criminal or tortious act may still be within the scope of employment (even before the court needs to address foreseeability of the act). See *Bryant*, 180 Mich App at 100. Historically, this Court has observed that an employer can reasonably anticipate that an employee may commit minor crimes or torts in the prosecution of the business. *Id.* at 101, quoting

-16-

1 Restatement Agency, 2d, § 231, p 512.[20]  See also *id*. at 102; Restatement Third of Agency, § 7.07.  For this reason, "Michigan cases have imposed liability on employers whose servants committed simple batteries while repossessing property, collecting money from a patron, or ejecting a patron from a bar." *Bryant*, 180 Mich App at 102 (citations omitted).  See also *Stewart*, 334 Mich at 78-81; *Dobos v Wu*, unpublished per curiam opinion of the Court of Appeals, issued November 23, 2021 (Docket No. 353926) (reversing trial court decision granting summary disposition to employer, a Meijer grocery store, where its cashier, whose duties did not include breaking up fights, injured patrons while breaking up a fight; concluding that a question of fact existed as to whether he was acting within the scope of employment).  "Our Supreme Court has also held that where a night watchman, who carried a revolver, killed someone he believed was going to do damage to his employer's property, it was for the jury to determine whether he was acting in the scope of his employment." *Bryant*, 180 Mich App at 103, citing *Cook*, 189 Mich at 458.  Thus, while the extremity of a tort or crime is one aspect of the inquiry, the central question remains whether the conduct fell within the scope of employment.  And that question turns on whether the employee was acting on their own behalf, or rightly or wrongly believed they were acting on behalf of their employer as part of their job.  *Harris*, unpub op at 4-5.

The court (and the jury) are supposed to engage in this inquiry before reaching the issue of whether tortious conduct was outside of the scope of employment but nonetheless foreseeable.  *Id*. at 8.  Moss-Fort testified at her deposition that her conduct, which is to say taking Gallup's phone out of his hands without his consent (i.e., the battery), was pursuant to policy.  Thus, the initial dismissal of Beaumont, at least as it relates to Count 5, seems to have been an error.  Part of the delay in moving to amend stemmed from Gallup attempting to gather enough documentary evidence of the existence of the policy; not just Moss-Fort's belief that she was acting according to the policy.  Because the trial court never should have dismissed Beaumont, and because aspects of the delay are attributable to Beaumont's own delay in producing the requested policy that further demonstrated that Moss-Fort acted within the scope of her employment, I would reverse and remand for the trial court to allow Gallup to amend Count 5.

That again, brings us to the issue of damages.  As the majority concludes in Part VI of the majority opinion, the medical testimony and documentary evidence in this case established irrefutable evidence that Moss-Fort's conduct did not cause harm or injury.  At best, Gallup is entitled to nominal damages for the battery.  That is true for any vicarious liability imparted to Beaumont for Moss-Fort's conduct.  In sum, I would conclude that Gallup may amend the complaint to reintroduce his claim of vicarious liability.  The amendment is not moot.  But he would only be entitled to nominal damages at best.

### B. NEGLIGENT HIRING, RETENTION, AND TRAINING

Regarding Gallup's motion to amend the claim of negligent hiring, retention, and training, I agree with the outcome stated in the majority opinion, but for different reasons.  Unlike Gallup's claim for vicarious liability, Gallup is no longer entitled to amend the complaint to revive his claim

---

[20] I observe that several of the examples on which I have relied as involving "minor" crimes, i.e., a chauffeur driving on the left side of the road, or a gardener assaulting a trespassing child with a stick, may be outdated and no longer considered minor.  Cf. *Bryant*, 180 Mich App at 99-101.

for negligent hiring, retention, and training, because the evidence at trial established that he cannot show damages. Count 4 of Gallup's complaint alleged that Beaumont was directly liable for Gallup's injuries because it was negligent in hiring, retaining, and training Moss-Fort. Essentially, he claimed that Beaumont did not adequately vet Moss-Fort before hiring her and improperly training her. Like the proposed amendment related to Count 5, Gallup relied on the newly-disclosed policy, produced in response to a trial subpoena and order to compel.

Like ordinary negligence, to prove a prima facie claim for negligent hiring, training, and retention, a plaintiff must prove four elements: (1) a duty owed, (2) breach of that duty, (3) causation, and (4) damages. *Brown v Brown*, 478 Mich 545, 552; 739 NW2d 313 (2007). When Gallup moved to amend his complaint, and when he filed his appeal, the case turned on whether Beaumont owed Gallup a duty as it related to hiring, training, and continuing to employ Moss-Fort. Duty is a question of whether the relationship between the actor (Beaumont) and the injured person (Gallup) gives rise to a legal obligation on the actor's part for the benefit of the injured person. See *id*. at 552. "When analyzing whether a duty existed, we consider the foreseeability of harm to the plaintiff. Foreseeability alone does not impose a duty on the defendant, but it is a threshold question of duty." *Harris*, unpub op at 13, citing *Brown*, 478 Mich at 553, 556-557.[21] The crux of negligent hiring, training, and retention is that "the employer bears some responsibility for bringing an employee into contract with a member of the public despite knowledge that doing so was likely to end poorly." *Id*. at 574, citing *Hersh v Kentfield Builders, Inc*, 385 Mich 410, 412-413; 189 NW2d 286 (1971).

Here, the proposed amendment, including details of Beaumont's policy, was directly tied to Beaumont's duty to patients or visitors, like Gallup, in that it made Moss-Fort's conduct (i.e., the unconsented seizure of Gallup's phone from his hand) foreseeable, the issue that led to the prior improper grant of summary disposition. At the time of the proposed amendment, this amendment would not have been futile.

But now, the proposed amendment would be futile, albeit for a different reason: damages. As stated, negligent hiring, training, and retention, like ordinary negligence, requires proof of damages. *Brown*, 478 Mich at 552. The unrebutted medical testimony and documentary evidence presented at trial established that Moss-Fort's interaction with Gallup did not cause demonstrable harm. This is true for his preexisting shoulder, back, and hand issues. It is also true for his mental and emotional issues. Without harm or injury, Gallup no longer has a viable negligence claim. Unlike Count 5, where he may be entitled to nominal damages, his inability to demonstrate actual damages extinguishes this claim. I, therefore, would conclude that the trial court may have erred by denying the motion to amend, but at this point, Gallup is not entitled to relief as it relates to the proposed amendments to Count 4.

IV. CONCLUSION

---

[21] This issue is distinct from, but closely related to, the issue of foreseeability that may expose an employer to vicarious liability. See *Mueller v Brannigan Bros Restaurants & Taverns LLC*, 323 Mich App 556, 574-576; 918 NW2d 545 (2018).

For the reasons stated above, I respectfully dissent. I would affirm in part, reverse in part, and remand for further proceedings consistent with this dissenting opinion.

I would affirm the trial court's decision to admit the de bene esse deposition of Dr. Grias over Gallup's objection. Her testimony along with the other physicians' testimony established that Moss-Fort's conduct did not result in harm or injury to Gallup.

I would reverse the trial court's decision denying Gallup's motion for a directed verdict on Count 2 (civil battery). Drawing all reasonable inferences in favor of Moss-Fort, the testimony and body-camera footage establish that a civil battery occurred. I would remand for the trial court to enter judgment in Gallup's favor and consider whether he is entitled to nominal damages.

I would reverse the trial court's decision denying Gallup's motion to amend the complaint related to Count 5 (vicarious liability for battery), and remand for the trial court to allow Gallup to pursue such an amendment if he so chooses, with the understanding that he is entitled only to nominal damages.

Finally, I would affirm the trial court's decision denying Gallup's motion to amend the complaint related to Count 4 (negligent hiring, retention, and training) because such an amendment would be futile. The proposed amendment would be futile because the trial conclusively established that Gallup did not suffer actual harm or damages.

/s/ Noah P. Hood